UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ONEYDA LIZETH GARMENDIA CACERES, )<br>)<br>Petitioner, )<br>)<br>v. )<br>)<br>SAMUEL OLSON, )<br>KRISTI NOEM, )<br>PAMELA BONDI, )<br>TODD M. LYONS, )<br>ANTHONY MILLS, )<br>)<br>Respondents. ) | No. 1:25-cv-02532-RLY-KMB |

## ORDER GRANTING PETITION FOR HABEAS CORPUS

Petitioner Oneyda Lizeth Garmendia Caceres ("Petitioner") is detained at the Clark County Jail in Jeffersonville, Indiana, under the authority of U.S. Immigration and Customs Enforcement ("ICE"). She filed this writ of habeas corpus petition under 28 U.S.C. § 2241 seeking immediate release or, in the alternative, a prompt bond hearing pursuant to 8 U.S.C. § 1226(a). Dkt. 1. Petitioner argues that ICE unlawfully detained her under a statute making her ineligible for bond. Respondents argue that Petitioner's detention is lawful and that the only available remedy, if any, is a bond hearing.

The court finds that Petitioner is statutorily eligible for bond and that her continued detention without an opportunity for a bond hearing violates "the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Therefore, the court grants the petition to the extent that, within **seven days** of this order, **Respondents are ordered** to either: (1) afford Petitioner an individualized bond hearing before an Immigration Judge ("IJ") pursuant to 8 U.S.C. § 1226(a); or (2) release Petitioner from custody, under reasonable conditions of supervision.

I. **Background**

Petitioner is a native of Honduras, who entered the United States without inspection in or around September of 1996, and has lived in the United States ever since. Dkt. 1 ¶ 23. On October 21, 2025, federal agents arrested Petitioner in Chicago, Illinois without a warrant as part of "Operation Midway Blitz" and transferred her to an ICE holding facility. *Id.*; dkt. 12-1 (I-213 Narrative). After interviewing Petitioner, federal agents determined that she did not have legal status. Dkt. 12-1 at 2. Petitioner was then served with "a Notice to Appear, I-862 . . . I-200, and Pro Bono Legal Attorney List." *Id.* at 3. The Notice to Appear charged Petitioner as "an alien present in the United States who has not been admitted or paroled" and set an immigration court date of November 18. Dkt. 1-1 at 2.

On November 24, Petitioner filed a motion for a bond redetermination hearing. Dkt. 1 ¶ 27; dkt. 1-4. On December 15, the IJ issued a written decision before the hearing took place. *Id.*; dkt. 1-5. The decision stated in relevant part,

> The Court does not have jurisdiction to set bond. The Court issues this decision prior to the scheduled bond hearing. Per 8 CFR 1003.19(d), the Court looks to the removal record and sees that the Court sustained the Immigration and Nationality Act Section 212(a)(6)(A)(i) charge. As such, the Court does not have jurisdiction to set bond. See Matter of Yajure Hurtado, 29 I&N Dec. 216 (BIA 2025).

Dkt. 1-5.

Petitioner has a pending U-Visa application and deferred action as well as current work authorization that expires in 2027. Dkt. 1 ¶ 26; dkt. 16-2.

II. **Discussion**

Petitioner claims that her current detention violates the Immigration and Nationality Act ("INA") (Count I) and the Due Process Clause of the Fifth Amendment of the U.S. Constitution (Count II). Dkt. 1 ¶¶ 75–82. In opposition, Respondents make four arguments: (1) Petitioner has

not exhausted her administrative remedies by appealing the IJ's December 15 decision; (2) Petitioner is lawfully detained under the INA pursuant to 8 U.S.C. § 1225(b)(2) because she is an "applicant for admission"; (3) Petitioner is lawfully detained under the INA pursuant to 8 U.S.C. § 1226 because she had the opportunity to receive a bond hearing; and (4) Petitioner's detention does not violate the Due Process Clause. Dkt. 12.

As will be explained below, the court finds that Petitioner's detention is governed by § 1226(a) and that it is unlawful because she has not been afforded a bond hearing. Because Petitioner is entitled to habeas corpus relief on these grounds, the court does not address the constitutional arguments.

### A. Exhaustion of Administrative Remedies

Respondents argue that Petitioner did not exhaust her administrative remedies by appealing the IJ's December 15 decision to the BIA or the Seventh Circuit Court of Appeals. Dkt. 12 at 5. Petitioner argues that appealing the IJ's decision is futile because "DHS has taken the categorical position that a noncitizen like Petitioner, who entered without inspection, is subject to mandatory detention under 8 U.S.C. § 1225." Dkt. 16 at 6. As seen above, the IJ that denied jurisdiction to hold a bond hearing cited *Matter of Yajure Hurtado*, a binding BIA decision that encapsulates this policy position. *Id.*

Respondents do not cite a statute requiring habeas petitioners to move for a bond hearing before seeking habeas relief. Thus, in the absence of a congressional mandate, the Seventh Circuit maintains that "'sound judicial discretion governs'" whether litigants are required to exhaust their administrative remedies before filing a habeas petition. *Gonzalez v. O'Connell*, 355 F.3d 1010, 1016 (7th Cir. 2004) (quoting *McCarthy v. Madigan*, 503 U.S. 140 (1992)). *Gonzalez* held that exhaustion is inappropriate when:

> (1) requiring exhaustion of administrative remedies causes prejudice, due to unreasonable delay or an indefinite timeframe for administrative action; (2) the agency lacks the ability or competence to resolve the issue or grant the relief requested; (3) appealing through the administrative process would be futile because the agency is biased or has predetermined the issue; or (4) where substantial constitutional questions are raised.

*Id.* (quoting *Iddir v. INS*, 301 F.3d 492, 498 (7th Cir. 2002)).

In this case, requiring Petitioner to appeal the IJ's decision before filing this habeas petition would be futile because the agency has "predetermined" the issue. Respondents, like the IJ, maintain that Petitioner is detained under § 1225, which does not provide an opportunity for bond hearings. Respondents have not shown that there is any reason to conceive that the BIA would change its position. *See H.G.V.U. v. Smith*, 2025 WL 2962610, at *4 (N.D. Ill. Oct. 20, 2025) ("Requiring Petitioner to exhaust his remedies by attempting to appeal the denial of bond would be futile. Indeed, if Petitioner were to appeal the decision of the Detroit Immigration Judge, Petitioner would be appealing to the very agency, the BIA, that issued *Matter of Yajure Hurtado*, which stripped the Immigration Court of its jurisdiction to set bond."). Because the issue is predetermined, Petitioner is not required to move for a bond hearing before challenging her detention.

### B. The Lawfulness of Petitioner's Detention Pursuant to § 1225

The merits of the petition revolve around Respondents' statutory authority to detain Petitioner while her removal proceedings remain pending. 8 U.S.C. § 1226 and § 1225 govern the detention and removal of noncitizens. In general, § 1226 applies to aliens already present in the United States," while § 1225 applies to "certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2)." *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018).

Section 1226 governs the "usual" removal process, which involves an evidentiary hearing before an IJ. *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 108 (2020). Proceedings are

4

initiated under 8 U.S.C. § 1229(a), also known as "full removal," by filing a Notice to Appear with the Immigration Court. *Matter of E-R-M- & L-R-M-*, 25 I. & N. Dec. 520, 520 (BIA 2011). Section 1226(a) provides:

> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States ....
> [T]he Attorney General—
>
> (1) may continue to detain the arrested alien; and
> (2) may release the alien on—
> (A) bond . . . ; or
> (B) conditional parole . . . .

8 U.S.C. § 1226(a). An immigration officer makes the initial determination to either detain or release the noncitizen. After that initial decision has been made, "[f]ederal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." *Jennings*, 583 U.S. at 306 (citing 8 C.F.R. § 236.1(d)(1)); *see also* 8 C.F.R. § 1236.1(c)(8), (d)(1). At that hearing, the noncitizen "may secure his release if he can convince the officer or immigration judge that he poses no flight risk and no danger to the community." *Nielsen v. Preap*, 586 U.S. 392, 397–98 (2019) (citing 8 C.F.R. §§ 1003.19(a), 1236.1(d)); *see also Hernandez v. Sessions*, 872 F.3d 976, 982 (9th Cir. 2017) ("[T]he burden is on the non-citizen to 'establish to the satisfaction of the Immigration Judge . . . that he or she does not present a danger to persons or property, is not a threat to the national security, and does not pose a risk of flight.'") (citing *In re Guerra*, 24 I. & N. Dec. 37, 38 (BIA 2006)).

In contrast, § 1225 governs "inspection by immigration officers." Section 1225(b)(1) deals with "inspection of aliens arriving in the United States and certain other aliens who have not been admitted or paroled" and provides that immigration officers *shall* order certain noncitizens removed without further hearing or review unless the noncitizen indicates an intention to apply for

5

asylum. § 1225(b)(1)(A)(i). This applies to noncitizens who have engaged in misrepresentation or have failed to meet document requirements under §§ 1182(a)(6)(C) or 1182(a)(7). *Id.*

Section 1225(b)(2) pertains to "[i]nspection of other aliens." In relevant part, it provides that "in the case of an alien who is an *applicant for admission*, if the examining immigration officer determines that an alien *seeking admission* is not clearly and beyond a doubt entitled to be admitted, the alien *shall be* detained for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A) (emphasis added). According to § 1225(a)(1), an "applicant for admission" is "[a]n alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival . . .)."

In sum, detention pursuant to § 1225 is mandatory and regulations do not provide for a bond hearing. Detention pursuant to § 1226(a) is discretionary and regulations provide for a bond hearing. Petitioner argues that she is eligible for a bond hearing because, based on the statute's text, framework, and historical agency practice, she can only lawfully be detained pursuant to 8 U.S.C. § 1226(a). Dkt. 1 ¶ 44. Respondents argue that Petitioner is subject to the broader "catchall provision" in § 1225(b)(2) because she is an "applicant for admission" according to § 1225(a)(1). Dkt. 12 at 7–8.

      **i.**     **Statutory Text**

As seen above, § 1225(b)(2) applies to noncitizens who fit three criteria: (1) "applicants for admission," (2) "if the examining immigration officer determines that an alien seeking admission*,*" and (3) "is not clearly and beyond a doubt entitled to be admitted." 8 U.S.C. § 1225(b)(2)(A). Respondents argue that Petitioner fits the criteria: she is "an applicant for admission" under § 1225(a)(1) and she is "not clearly and beyond a doubt entitled to be admitted." Dkt. 12 at 8. Moreover, Respondents appear to claim that Petitioner "is plainly seeking admission

6

to the United States" because she is seeking asylum. Dkt. 12 at 11. As Petitioner points out, however, she has never applied for asylum. Dkt. 16 at 8. Moreover, her previous U-Visa application does not bring her actions within the plain meaning of "seeking admission." "'[S]eeking' means 'asking for' or 'trying to acquire or gain' and implies some kind of affirmative action on the part of the applicant." *Alejandro v. Olson*, 2025 WL 2896348, at *7 (S.D. Ind. Oct. 11, 2025); *see also Beltran Barrera v. Tindall*, No. 3:25-cv-541-RGJ, 2025 WL 2690565, at *4 (W.D. Ky. Sept. 19, 2025) (rejecting the respondents' interpretation of section 1225(b)(2) to cover all noncitizens who are present without being admitted because "[t]he term 'seeking' 'implies action'" and "those who have been present in the country for years are not actively 'seeking admission.'"). Petitioner is not "seeking admission." She entered the United States unlawfully decades ago and has lived here ever since. Instead, noncitizens such as Petitioner are "seeking to remain in the United States." *Alejandro*, 2025 WL 2896348, at *7 ("[Petitioner] is not actively 'seeking' 'lawful entry' because he entered the United States over 20 years ago.").

The fact that Petitioner does not fit into the third criterion, "seeking admission," supports the conclusion that § 1225(b)(2) does not apply to her. As the Seventh Circuit recently explained regarding the same argument, "while a noncitizen arrested in the Midwest might qualify as 'an alien present in the United States who had not been admitted,' § 1225(a)(1), the mandatory detention provision upon which Defendants rely, limits its scope to an 'applicant for admission' who is 'seeking admission,' § 1225(b)(2)(A)." *Castañon-Nava v. U.S. Dep't of Homeland Sec.*, No. 25-3050, 2025 WL 3552514, at *9 (7th Cir. Dec. 11, 2025) (stating that "Plaintiffs have the better argument on the current record" referring to argument that "ICE's authority to detain a noncitizen

7

discovered within the country derives from § 1226(a) and not from § 1225(b).").[1] The plain text of § 1225(b)(2)(A) does not apply to Petitioner.

### ii. Statutory Framework

It is a "fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Davis v. Michigan Dep't of Treasury*, 489 U.S. 803, 809 (1989); *see also King v. Burwell*, 576 U.S. 473, 486 (2015) (Our duty, after all, is "to construe statutes, not isolated provisions.") (internal quotation omitted). Considering § 1225 as a whole demonstrates that the most natural meaning of § 1225 is that it applies to "arriving" noncitizens attempting to enter the United States—not to noncitizens who are already in the country. *See* dkt. 1 ¶¶ 50–51. Section 1225 is titled: "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing" and it repeatedly refers to "arriving" aliens throughout. *See* 8 U.S.C. § 1225(b)(1)(A)(i) (screenings for aliens "arriving in the United States"); *id.* § 1225(b)(2)(C) (aliens "arriving on land . . . from a foreign territory contiguous to the United States" may be returned to that territory pending removal proceedings); *id.* § 1225(d)(1) (immigration officers authorized to inspect "any vessel, aircraft, railway car, or other conveyance or vehicle in which they believe aliens are being brought into the United States"). The statute further explicitly addresses "crewm[e]n" and "stowaway[s]" in § 1225(b)(2), reflecting that Congress envisions § 1225 to apply broadly to "arriving" noncitizens—not just § 1225(b)(1). In addition, its sister statute, 8 U.S.C. § 1225a, focuses on the pre-inspection of aliens entering the country at foreign airports. As Respondents concede, Petitioner "is not 'arriving' in the United States." Dkt. 12 at 8. Thus, the statutory context makes clear that the terms

---

[1] As Respondents point out, the decision in *Castañon-Nava* is not binding on the issues before the court here. *See* dkt. 12 at 3. The court cites this decision for its persuasive authority.

in § 1225(b)(2) do not include individuals such as Petitioner who entered without inspection and are later apprehended when already inside the United States.

Respondents' interpretation also disregards the relationship between § 1225 and § 1226 within the INA. While § 1225 focuses on "inspection" of "arriving aliens," § 1226 pertains to the "[a]pprehension and detention of aliens." The plain language here suggests that § 1226—not § 1225—plainly applies to Petitioner because she is an alien, who was "apprehended" and "detained." The fact that these two classes of noncitizens would be treated differently makes sense within broader immigration law. As the Seventh Circuit explained, "the difference in treatment between a noncitizen at the border and one already in the United States fits within the broader context of our immigration law. Indeed, '[t]he distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law.'" *Castañon-Nava*, 2025 WL 3552514, at *9 (quoting *Zadvydas*, 533 U.S. at 693); *see also Leng May Ma v. Barber*, 357 U.S. 185, 187 (1958). ("[O]ur immigration laws have long made a distinction between those aliens who have come to our shores seeking admission ... and those who are within the United States after an entry, irrespective of its legality.").

Last, Respondents' interpretation of § 1225(b)(2) would make the recently enacted amendment to § 1226(c) superfluous. Courts construe statutes "so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." *Corley v. United States*, 556 U.S. 303, 314 (2009). "A basic canon of construction requires us to give meaning to every word of a statute." *Senne v. Vill. of Palatine, Ill.*, 695 F.3d 597, 605 (7th Cir. 2012). Congress passed the Laken Riley Act in 2025 to amend section 1226(c) and include more classes of aliens who are ineligible for bond under § 1226(a). Laken Riley Act, Pub. L. No. 119-1, sec. 236, § 2, 139 Stat. 3, 3 (2025). One of those new classes of non-bondable aliens are aliens not

9

admitted into the United States who were charged with specific crimes. 8 U.S.C. § 1226(c)(1)(E) (citing *id.* § 1182(a)(6)(A)). Under the Respondents' expansive interpretation of § 1225, the amendment would have no purpose. Section 1225(b)(2) would already provide for mandatory detention of every unadmitted alien, regardless of whether the alien falls within one of the new classes of non-bondable aliens established by the Laken Riley Act. Adopting Respondents' reading would render the exceptions in § 1226(c) completely unnecessary and illogical. "When Congress creates 'specific exceptions' to a statute's applicability, it 'proves' that absent those exceptions, the statute generally applies. *Rodriguez v. Bostock*, 779 F. Supp. 3d, 1256–57 (W.D. Wash. 2025) (quoting *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 400 (2010)). Thus, a plain reading of the exception in § 1226(c) implies that § 1226 applies to noncitizens such as Petitioner, who have not been admitted or paroled.

### iii. Historical Agency Practice

Respondents' argument also fails when considering the statute's prior usage and interpretation. After Congress passed the current detention scheme as part of the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), the Executive Office for Immigration Review ("EOIR") drafted regulations explaining that, generally, people who entered the country without inspection are subject to detention under § 1226(a). *See* 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997) (Despite being applicants for admission, aliens who are present without having been admitted or paroled (formerly referred to as aliens who entered without inspection) will be eligible for bond and bond redetermination."). Indeed, until the recent policy shift in July of 2025, the government previously applied section 1226(a) to unadmitted noncitizens, such as Petitioner, who entered the country without inspection. *See Matter of Hurtado*, 29 I&N Dec. 216 n.6. ("We acknowledge that for years Immigration Judges have conducted [section 1226(a)] bond

10

hearings for aliens who entered the United States without inspection."). Though an agency's interpretation of a statute is not dispositive, *see Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024), taken together, the plain text of the statute, the statutory context, and the statute's prior usage and history demonstrate that Petitioner may only be lawfully detained pursuant to § 1226(a).

### C.  The Lawfulness of Petitioner's Detention Under § 1226

Respondents argue that Petitioner is lawfully detained under § 1226 because she had an opportunity to receive a bond hearing before an IJ. Dkt. 12 at 12. Thus, this Court cannot review the IJ's decision due to § 1226(e), which states:

> The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole.

*Id.* (quoting 8 U.S.C. § 1226(e)).

There is no evidence that Petitioner had an opportunity to receive a bond hearing where the IJ would make an individualized determination of her custody pursuant to 8 C.F.R. § 236.1(d)(1). Indeed, the IJ's decision, explicitly says that "[t]he Court issues this decision prior to the scheduled bond hearing." Dkt. 1-5. The IJ did not "revoke" or "deny" bond; she decided that she did not have jurisdiction to do either of those actions. Furthermore, Respondents do not cite any binding precedent applying § 1226(e) to a habeas petition seeking a bond hearing pursuant to § 1226(a). In fact, Respondents' case, *Demore v. Kim*, 583 U.S. 510 (2003), held that § 1226(e) did *not* deprive courts of habeas jurisdiction over a challenge to detention under § 1226(c) because the petitioner did not challenge a discretionary judgment or a decision, but the statutory framework permitting his detention without bail. 530 U.S. at 516–17. Similarly, Petitioner is not challenging a discretionary judgment—she is challenging her ongoing detention without being given the opportunity to seek a discretionary judgment regarding her custody.

11

In sum, Petitioner's detention without opportunity to request a bond hearing from an IJ who will individually determine her eligibility for bond pursuant to § 1226(a) violates the INA. Petitioner is thus entitled to habeas relief because her continued detention violates ". . . the laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).

### III. Scope of Relief

Petitioner requests immediate release from custody or, in the alternative, an individualized bond hearing pursuant to § 1226(a). Dkt. 1 at 24. Immediate release is the customary remedy in habeas proceedings. *See Thursaissigiam*, 591 U.S. at 107 ("Habeas has traditionally been a means to secure release from unlawful detention."); *Munaf v. Geren*, 553 U.S. 674, 698 (2008) (explaining that "the quintessential habeas remedy" is release from custody). Nevertheless, in granting habeas relief, as in every other area of the law, "the remedy should be appropriate to the violation." *Waller v. Georgia*, 467 U.S. 39, 50 (1984). Ordering an individualized bond hearing is appropriate here because detention under § 1226(a) is discretionary and the due process violation arises from Petitioner's detention without a bond hearing.

### IV. Conclusion

For the above reasons, the court **grants** the petition for writ of habeas corpus. Respondents' detention of Petitioner without an individualized bond hearing violates the ". . . laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).

Within **seven days** of this order, Respondents must either: (1) provide Petitioner with an individualized bond hearing before an IJ pursuant to 8 U.S.C. § 1226(a); or (2) release Petitioner from custody, under reasonable conditions of supervision. Respondents must document that they have provided Petitioner with a bond hearing pursuant to 8 U.S.C. § 1226(a) or that they have released her. Respondents **must file notice with the court within four days** of either action.

The **clerk is directed** to enter final judgment.

**IT IS SO ORDERED.**

Date: 1/12/2026

_____
RICHARD L. YOUNG, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Hishem Adel Alsalman
Alsalman Law Office PLLC
hishem@alsalmanlaw.com

R. Jeffrey Lowe
KIGHTLINGER & GRAY, LLP (New Albany)
jlowe@k-glaw.com

Shelese M. Woods
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
shelese.woods@usdoj.gov